ORIGINAL

MATTHEW G. WHITAKER
Acting Attorney General
MICHAEL G. WHEAT, CBN 118598
ERIC J. BESTE, CBN 226089
JANAKI S. GANDHI, CBN 272246
COLIN M. MCDONALD, CBN 286561
Special Attorneys of the United States
880 Front Street, Room 6293
San Diego, CA 92101
619-546-8437/6695/8817/9144
michael.wheat@usdoj.gov

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 1 1 2019

at 4 o'clock and 05 min. P M
SUE BEITIA, CLERK

Attorneys for the United States

# UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 19-CR-00003-JMS |
| Plaintiff, | |
| v. | P L E A   A G R E E M E N T |
| DANIEL SELLERS(6), | |
| Defendant. | |

## MEMORANDUM OF PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the United States of America, by its attorney, the Acting Attorney General Matthew G. Whitaker and the Special Attorneys named herein, and the Defendant, DANIEL SELLERS, and his attorney, Richard H.S. Sing, have agreed upon the following:

1

1.      Defendant understands that he will be charged in an Information with violating Title 18, U.S.C., Section 1905 – Disclosure of Confidential Information. Defendant understands that the offense to which Defendant is pleading guilty has the following elements:

  a.      The defendant was an officer or employee of the United States;

  b.      The defendant disclosed confidential information; and

  c.      The defendant knew that the information so disclosed was confidential in the sense that its disclosure was forbidden by agency official policy.

For purposes of this statute, the term "employee" includes an employee of a contractor, subcontractor, grantee, subgrantee, or personal services contractor, of an agency. 18 USC § 1833(b)(4).

2.      Defendant has read the charges against him contained in the Information, and those charges have been fully explained to him by his attorney.

3.      Defendant fully understands the nature and elements of the crimes with which he has been charged.

4.      Defendant will enter a voluntary plea of guilty to the Information charging him with Disclosure of Confidential Information, in violation of Title 18, U.S.C., Section 1905.   In exchange, if Defendant fully complies with all provisions

of this Plea Agreement, the United States agrees to dismiss the remaining counts in the Indictment and Superseding Indictment against Defendant.

5.   Defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6.   Defendant enters this plea because he is in fact guilty of Disclosure of Confidential Information and agrees that his plea is voluntary and not the result of force or threats.

7.   Defendant understands that the penalties for the offense to which he is pleading guilty include:

  a. up to one year imprisonment;

  b. a fine of up to $100,000;

  c. a term of supervised release of not more than one year, and

  d. a $25 special assessment.

Defendant agrees to pay $25 for the count to which he is pleading guilty to the District Court's Clerk's Office, to be credited to said special assessments, before the commencement of any portion of sentencing.   Defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this agreement at its option.

8.     Defendant has fully discussed the facts of this case with defense counsel.   Defendant has committed each of the elements of the crime, and admits that there is a factual basis for this guilty plea.   The following facts are true and undisputed:

a.   At all times material to the below events, Defendant DANIEL SELLERS ("SELLERS") was a detective in the Criminal Intelligence Unit (CIU) of the Honolulu Police Department (HPD) and cross-sworn as a federal agent and deputy. As a HPD detective and a cross-sworn federal employee, SELLERS had access to several law enforcement sensitive data storage systems used for the investigation of criminal violations, and was required to keep information he obtained from those systems confidential. SELLERS knew that the information contained in these databases was confidential, in the sense that its disclosure was forbidden by agency official policy.   Nonetheless, as outlined below, SELLERS knowingly disclosed confidential information to a person who had not authorized by law or policy to possess for such information.

### Background

b.     On or about the week of June 21, 2013, an individual altered the mechanism securing the mailbox in front of Louis Kealoha (L. Kealoha) and

4

Katherine P. Kealoha's (K. Kealoha) residence in Honolulu, Hawaii, so that the mailbox could be easily removed.

c.      On or about June 21, 2013, at about 11:30 p.m., an individual drove a Lexus automobile to the front of the Kealohas' residence, walked from the Lexus to the mailbox in the front yard of the residence, lifted the unsecured mailbox from its post, placed it in his car, and drove away.

d.      On or about June 22, 2013, prior to any official report to HPD of the alleged theft, Minh-Hung Nguyen ("Nguyen") secretly removed the hard drive from the video surveillance system at the Kealohas' residence and transported it to HPD headquarters.

e.      On or about June 22, 2013, at about 1:28 p.m., Nguyen spoke with K. Kealoha on the telephone.   Immediately thereafter, at about 1:31 p.m., K. Kealoha called 911 and falsely reported that the mailbox in front of the Kealohas' residence had been stolen.

f.      On or about June 22, 2013, after 1:31 p.m., K. Kealoha provided a handwritten statement on HPD Form 252 stating, in part: "[w]e will be reviewing our security camera and will give that information to the police when it becomes available."   K. Kealoha did not reveal that the surveillance video of the alleged mailbox theft had already been retrieved by Nguyen.

g.     On or about June 22, 2013, in the afternoon, Nguyen met Niall Silva ("Silva") at HPD headquarters to review and process the video recording of the alleged mailbox theft at the Kealohas' residence ("the Video") that Nguyen had removed.

h.     On or about June 22, 2013, Nguyen falsely identified G.K.P. as the person depicted on the Video allegedly stealing the mailbox.

i.     On or about June 22, 2013, after 2:30 p.m., Derek Wayne Hahn ("Hahn") instructed Silva to violate HPD protocols and not log the original hard drive Video into evidence, but instead to create compact discs with select excerpts of the Video.

j.     On or about June 22, 2013, Hahn called Gordon Shiraishi ("Shiraishi") at approximately 2:49 p.m. and 3:56 p.m.

k.     On or about June 22, 2013, at approximately 5:18 p.m., L. Kealoha called Shiraishi.

l.     On or about June 22, 2013, between 7:10 p.m. and 8:01 p.m., K. Kealoha and Hahn exchanged numerous text messages.

m.    On or about June 22, 2013, beginning at approximately 8:10 p.m., Silva and Hahn caused confidential electronic databases to be searched for information about G.K.P., his residence address, his relatives and his neighbors.

n.      On or about June 22, 2013, Nguyen and Silva drove in a HPD vehicle to G.K.P.'s residence and began surveillance.

o.      On or about June 22, 2013, Shiraishi and Hahn caused HPD officers to keep G.K.P., and the residence of K. Kealoha and L. Kealoha, under continuous surveillance.

p.      On or about June 23, 2013, SELLERS printed out information from confidential electronic databases concerning G.K.P.'s neighbor.

q.      On or about June 23, 2013, between 2:49 a.m. and 2:56 a.m., K. Kealoha and Hahn exchanged approximately 10 text messages.

r.      On or about June 24, 2013, L. Kealoha falsely identified G.K.P. as the person depicted on the Video allegedly stealing the mailbox.

s.      On or about June 24, 2013, a CIU officer caused confidential law enforcement databases to be searched for information about G.K.P.'s neighbors.

<u>The Offense</u>

t.      On or about Saturday, June 29, 2013, SELLERS unlawfully disclosed to K. Kealoha, in her personal capacity, the results of his query in a confidential law enforcement database about the owner of a white car belonging to one of G.K.P's neighbors, and told K. Kealoha that the Lexus shown in the Video was not the same as the car owned by G.K.P.'s neighbor.

7

u.     Later on Saturday, June 29, 2013, K. Kealoha falsely identified G.K.P. as the person in the Video allegedly stealing her mailbox and placing it into the Lexus.

v.     On or about June 29, 2013, L. Kealoha and K. Kealoha caused SELLERS to direct HPD officers to arrest G.K.P. for stealing their mailbox.

9.     Pursuant to CrimLR32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charge to which the Defendant is pleading guilty adequately reflects the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

10.     Pursuant to CrimLR32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of Defendant in connection with this matter:

a.     Factual admissions, see ¶ 8 above.

b.     Offense level stipulations:

(1) Base offense level [USSG § 2H3.1]                    +6

(2) Acceptance of responsibility [USSG § 3E1.1(a)]      -2

The parties further agree that other guideline sections may be applicable to Defendant's case.

8

11.    The parties agree that notwithstanding the parties' Agreement herein, the Court is not bound by any stipulation entered into by the parties but may, with the aid of the presentence report, determine the facts relevant to sentencing.

12.    The Defendant is aware that he has the right to appeal his conviction and the sentence imposed. However, Defendant knowingly waives the right to appeal, except as indicated in subparagraph "b" below, his conviction and any sentence within the maximum provided in the statute of conviction or the manner in which that sentence was determined, on any ground whatever, in exchange for the concessions made by the prosecution in this plea agreement.

a.    The Defendant also waives his right to challenge his conviction or sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that defendant may make such a challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

b.    If the Court imposes a sentence greater than specified in the guideline range determined by the United States to be applicable to the Defendant, the Defendant retains the right to appeal the portion of his sentence greater than specified in that guideline range and the manner in which that portion was determined and to challenge that portion of his sentence in a collateral attack.

c.     The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

13     The Defendant understands that the District Court in imposing sentence will consider the provisions of the Sentencing Guidelines. The Defendant agrees that there is no promise or guarantee of the applicability or non-applicability of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

14.     The Defendant understands that this Agreement will not be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary. The Defendant understands that the Court will not accept an agreement unless the Court determines that the remaining charge adequately reflects the seriousness of the actual offense behavior and accepting the agreement will not undermine the statutory purposes of sentencing.

15.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     If Defendant persisted in a plea of not guilty to the charges against him he would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by a judge sitting without a jury. The Defendant has a

10

right to a jury trial.   However, in order that the trial be conducted by the judge sitting without a jury, the Defendant, the prosecution and the judge all must agree that the trial be conducted by the judge without a jury.

   b.    If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random.   Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges.   The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty.   The jury would be instructed that the Defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

   c.    If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the Defendant's guilt beyond a reasonable doubt.

   d.    At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the Defendant. Defendant would be able to confront those prosecution witnesses and his attorney would be able to cross-examine them.   In turn, Defendant could present witnesses and other evidence on his own behalf.   If the witnesses for the Defendant would not

appear voluntarily, he could require their attendance through the subpoena power of the Court.

e.   At a trial, the Defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.

16.   Defendant understands that by pleading guilty, he is waiving all of the rights set forth in the preceding paragraph.   Defendant's attorney has explained those rights to him, and the consequences of the waiver of those rights.

17.   Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreement reached, other than those set forth in this Agreement, to induce Defendant to plead guilty.

18.   Should the Court refuse to accept this Agreement, it is null and void and neither party shall be bound thereto.   The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by stipulations between the parties.

19.   Defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of Defendant's conduct regarding the charges against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

12

20.     The Defendant agrees that he will fully cooperate with the United States in the investigation and prosecution of others, *see attached* ADDENDUM.

21.     In the event that the Defendant does not breach any of the terms of this Agreement but the Court nonetheless refuses to accept the Agreement after Defendant has made statements to law enforcement authorities or representatives of the United States pursuant to this Agreement, the prosecution agrees not to use said statements in its case in chief in the trial of the Defendant in this matter. Defendant understands that this does not bar the use of information and evidence derived from said statements or prohibit the use of the statements by the prosecution in cross-examination or rebuttal.

22.     Pursuant to Guideline Section 5Kl.1 and Rule 35(b), Federal Rules of Criminal Procedure, the prosecution may move the Court to depart from the Guidelines on the ground that the Defendant has provided substantial assistance to authorities in the investigation or prosecution of another person who has committed an offense. Defendant understands that:

        a.      The decision as to whether to make such a request or motion is entirely up to the prosecution.

        b.      This Agreement does not require the prosecution to make such a request or motion.

13

c.     This Agreement confers neither any right upon the Defendant to have the prosecution make such a request or motion, nor any remedy to Defendant in the event the prosecution fails to make such a request or motion.

d.     Even in the event that the prosecution makes such a request or motion, the Court may refuse to depart from the Guidelines.

DATED: Honolulu, Hawaii, _____ Jan 19 _____.

AGREED:

MATTHEW G. WHITAKER
Acting Attorney General


_____
MICHAEL G. WHEAT
ERIC J. BESTE
JANAKI S. GANDHI
COLIN M. MCDONALD
Special Attorneys to the Attorney General

_____
DANIEL SELLERS
Defendant

_____
RICHARD H.S. SING, Esquire
Attorney for Defendant SELLERS

14

## ADDENDUM TO PLEA AGREEMENT
*(UNITED STATES v. DANIEL SELLERS, 17CR0582-06-JMS-RLP)*

# COOPERATION

A.    Defendant has provided substantial assistance, and expressed a desire to continue to provide substantial assistance after entering a guilty plea in this case, to the United States in the investigation and prosecution of others.

B.    Defendant agrees to be interviewed by federal law enforcement agents and attorneys and to tell everything defendant knows about every person involved presently or in the past in obstruction of justice and narcotics distribution, as well as other violations of law.   Defendant also agrees to produce all documents and other evidence in defendant's possession or control related to these violations.

C.    Defendant agrees not to do any undercover work or tape record any conversations or gather evidence unless instructed by the agent assigned to defendant. Defendant can be prosecuted for any criminal activity undertaken without instructions.

D.    Defendant agrees to provide statements under penalty of perjury and to testify before any federal or state grand jury, and at any pretrial, trial or post-trial proceedings.   Defendant will provide complete, truthful and accurate information and testimony.   Defendant agrees to submit to a polygraph examination to test the truthfulness of defendant's statements, upon request by the United States.

E.     The United States agrees that, if defendant fully complies with this plea agreement, it will not use any statements made by defendant during the period of post-plea cooperation in any further prosecution of defendant for any offense, or in defendant's sentencing as provided in Guideline § 1B1.8.  If defendant does not fully comply with this plea agreement, all statements made by defendant before, during and after this plea agreement, and any leads or evidence derived from such statements can be used against defendant and are admissible in court.

F.     If at any time the court asks the United States a direct question about information defendant disclosed under this agreement or any proffer agreements, the prosecution must truthfully answer the question.   The answer shall not constitute a breach of this plea or cooperation agreement.

G.     Statements made by defendant pursuant to this plea agreement are not statements "made in the course of any proceedings under Rule 11 of the Federal Rules of Criminal Procedure" and are not statements "made in the course of plea discussions."

H.     If the United States Department of Justice decides that defendant has provided substantial assistance, and has fully complied with this plea agreement, it will make a motion for a downward departure under 18 U.S.C. § 3553, or § 5K1.1 of the Sentencing Guidelines.   Defendant acknowledges that even if the United States makes a motion, the Court may reject the United States' motion and

recommendation for departure and refuse to depart downward, and defendant would not be allowed to withdraw his guilty plea.

I.     If the United States Department of Justice decides to make a substantial assistance motion, it will inform the sentencing judge of: (1) this plea agreement; (2) the nature and extent of defendant's activities in this case; (3) the full nature and extent of defendant's cooperation with the United States and the date when such cooperation commenced; and (4) all information in the possession of the United States relevant to sentencing, which may include information defendant disclosed under this agreement or any proffer agreements.   Disclosure of such information in the substantial assistance motion shall not constitute a breach of this plea or cooperation agreement.

J.     If defendant provides materially false, incomplete, or misleading testimony or information, or breaches this plea agreement in any other way, the United States may prosecute defendant in connection with all federal criminal violations of which it is aware, including false statements, perjury and obstruction of justice, and defendant's sentencing guidelines may be adjusted for making false statements (e.g., § 3C1.1 and § 3E1.1). In addition, the United States may move to set aside this plea agreement, and prosecute defendant on all charges in the Indictment or Superseding Indictment in this case. However, if the United States elects not to set aside the plea agreement, defendant agrees that the United States

may recommend any lawful sentence without restriction by this plea agreement. Any prosecution and sentence resulting from a breach of this plea agreement may be based on information provided by defendant.

The defendant understands that the main plea agreement and this addendum embody the entire plea agreement between the parties and supersedes any other plea agreement, written or oral.

_____
DANIEL SELLERS
Defendant

_____
RICHARD H.S. SING, Esquire
Attorney for Defendant SELLERS

MATTHEW G. WHITAKER
Acting Attorney General

_____
MICHAEL G. WHEAT
ERIC J. BESTE
JANAKI S. GANDHI
COLIN M. MCDONALD
Special Attorneys to the Attorney General